IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

MICHAEL RAY SCOTT,

      **Plaintiff,**

      v.                                                   CASE NO. 24-3095-JWL

GENE WARD, Seward County
Sheriff, et al.,

      **Defendants.**

## MEMORANDUM AND ORDER

Plaintiff brings this pro se civil rights action under 42 U.S.C. § 1983. Plaintiff is in custody at the Seward County Jail in Liberal, Kansas ("SCJ"). The Court granted Plaintiff leave to proceed in forma pauperis. On July 1, 2024, the Court entered a Memorandum and Order (Doc. 4) ("M&O") finding that the proper processing of Plaintiff's Eighth Amendment claims could not be achieved without additional information, and directing SCJ officials to submit a *Martinez* Report. The M&O provides that "[o]nce the report has been received, the Court can properly screen Plaintiff's Complaint under 28 U.S.C. § 1915A." (Doc. 4, at 6.) The *Martinez* Report (Docs. 16, 18, and 20) (the "Report") has now been filed. The Court's screening standards are set forth in the Court's M&O.

**I. Nature of the Matter before the Court**

Plaintiff's claims relate to his medical care at the SCJ. Plaintiff alleges that he advised the SCJ that he was having abdominal pain on December 26, 2022. (Doc. 1, at 6.) On December 28, 2022, Plaintiff suffered from severe abdominal pain and nausea, and was taken to the Southwest Medical Center in Liberal, Kansas. *Id*. The doctor took blood tests and EKGs. *Id*.

1

On February 17, 2023, Plaintiff advised officers of severe chest and stomach pain, and Nurse Angie Davis advised Plaintiff to take Benadryl every two hours as needed.  *Id*.  At approximately 5:30 am the next morning, Officer Francis found Plaintiff unresponsive.  *Id*.  Francis determined that Plaintiff was not breathing and did not have a pulse, so he proceeded to administer CPR.  *Id*.  Officer Herman arrived on the scene and took over administering CPR.  *Id*.  When EMT arrived, Nurse Davis informed them that Plaintiff had a habit of faking symptoms.  *Id*.  EMT advised Davis that Plaintiff should not have been given Benadryl to alleviate severe chest and stomach pain.  *Id*.  EMT also stated that Plaintiff should have never been given CPR by SCJ staff due to the fact that Plaintiff had a faint pulse.  *Id*. at 7.  Their actions caused Plaintiff to receive fractures in his chest/rib area.  *Id*.

Plaintiff alleges that tests revealed a "positive analysis" for Hepatitis-C.  *Id*.  Plaintiff alleges that Dr. Jabel confirmed on March 28, 2023, and September 12, 2023, that Plaintiff's ongoing symptoms—severe abdominal pain, nausea, spider veins in the ankle area, and severe skin itching—were in fact symptoms of Hep-C.  *Id*.

On March 24, 2024, Plaintiff was taken to the SWMC due to severe vomiting and diarrhea, and a high fever.  *Id*.  SWMC staff stated that Plaintiff has profound visible scarring and an enlarged liver due to his Hepatitis-C being left untreated for over 500 days.  *Id*.  Plaintiff alleges that SCJ staff were notified multiple times by six doctors that Plaintiff needed to be seen by a gastric specialist to acquire genealogy information to treat the correct strain and to diagnose it properly.  *Id*. at 8, 11.  Plaintiff alleges that Defendants ignored health care providers recommendations for the Plaintiff to see a specialist to receive the proper medication and treatment.  *Id*. at 13.  Plaintiff alleges that he now has severe symptoms and is at "3/4 stage of 5 stages of liver problems."  *Id*. at 9–10.

2

Plaintiff alleges that because he is now seeking relief, SCJ staff are now trying to say there is no medical proof in the SWMC records that Plaintiff was diagnosed with Hep-C. *Id*. at 18. Plaintiff alleges that this is despite the diagnoses by Dr. Mitchell, Dr. Mohammad, the KU Medical Center and Health Care of Wichita, Kansas. *Id*. at 19–20. Plaintiff alleges that SCJ staff are now trying to "change or hide" the doctors' diagnoses and recommendations. *Id*. at 20.

Plaintiff alleges that the withholding of Plaintiff's necessary medical treatment constitutes cruel and unusual punishment in violation of the Eighth Amendment. *Id*. at 10. Plaintiff names Seward County Sheriff Gene Ward and SCJ Facility Nurse Angie Davis as defendants. Plaintiff seeks compensatory and punitive damages and unspecified injunctive relief. *Id*. at 5.

## II. The Report

The Report sets forth the medical care that Plaintiff has received while housed at the SCJ, including multiple trips to the Southwest Medical Center ("SWMC"). (Doc. 16, at 2–5.) The Report states that it was first noted that Plaintiff had Hepatitis-C when Plaintiff was seen at SWMC on February 18, 2023, but there were no diagnostic tests to confirm it. *Id*. at 3 (citing Exhibit C, filed under seal). The record from the February 18, 2023 visit states "[f]ollow up with gastroenterologist or hepatologist for treatment and monitoring of Hepatitis C." (Doc. 18–3, at 4.) On March 28, 2023, Plaintiff was seen by Dr. Jabel, who noted that Plaintiff was Hep-C positive and recommended that Plaintiff continue with his current medication. (Doc. 16, at 3) (citing Exhibit D, filed under seal). Additional follow-ups with Dr. Jabel and Dr. Riley[1] did not include any recommendations to see a specialist or for further testing regarding Plaintiff's Hep-C, and included orders for Plaintiff to continue with his current medication. *Id*. at 3–5.

The Report provides that:

---

[1] The Report notes that Dr. Jabel passed away and Dr. Riley assumed his duties.

> Dr. Heidi Riley, SCJ contract physician, has been seeing Mr. Scott since 2023, and has reviewed the medical records from SWMC and Dr. Jabel. Mr. Scott does not require life saving treatment for his hepatitis-C diagnosis. The recommendations from SWMC to see a gastroenterologist were for future follow-up and not mandatory medical treatment. There are no medical records supporting Mr. Scott opinion that untreated hepatitis-C is causing any ongoing medical problems. Other than it being mentioned as a condition during his hospitalization the SWMC records in no way state that hepatitis-C was the cause of Mr. Scott's complaints of pain, nausea and diarrhea. No medical provider directed SCJ to provide Mr. Scott specialized treatment. (An Affidavit from Dr. Heidi Riley will be submitted to the Court, but was not executed at the time of filing).
>
> At best, Mr. Scott's complaints to the Court appear to be based on his personal disagreement with the health care he has received. Mr. Scott was clearly afforded access to medical personnel capable of evaluating his treatment needs and SCJ followed the recommendations of those medical personnel, including multiple emergency room visits. There are no records that SCJ failed to follow the recommendations of medical personnel or denied Mr. Scott access to medical treatment. (**Exhibit R**, SCJ's complete file of Mr. Scott's medical requests).

(Doc. 16, at 5–6) (internal paragraphs omitted).

The record from Plaintiff's March 25, 2024 medical examination at SWMC provides under findings: "Liver: There is coarsened increased echotexture throughout the liver suggesting fatty infiltration. No focal lesions are seen." (Doc. 18–7, at 23.) The Report was supplemented with the Affidavit of Heidi Riley. (Doc. 20–1.) The Affidavit declares that Heidi Riley is an Advanced Practice Registered Nurse in private practice with Southwest Family Medicine. *Id*. at 1. She began providing contract medical services for the SCJ following the death of Dr. Jabel in 2023. *Id*. She is familiar with Plaintiff's treatment records and has personally seen and treated Plaintiff. *Id*. She declares that "[t]here are no medical records indicating that Mr. Scott requires an immediate consultation with a gastroenterologist or other medical specialist to treat his hepatitis-C, or that not being seen by a gastroenterologist or other medical specialist is causing any current medical

4

complaints." *Id*. at 1–2.  She further declares that she "last saw Mr. Scott on June 4, 2024, in response to a complaint of abdominal pain . . . [and] Mr. Scott's physical examination was not consistent with his complaint of pain." *Id*. at 2.

## III. DISCUSSION

"[D]eliberate indifference to a pretrial detainee's serious medical needs includes both an objective and a subjective component." *Strain v. Regalado*, 977 F.3d 984, 989 (10th Cir. 2020) (finding that although a pretrial detainee's claim is based on the Fourteenth Amendment, the same standard for Eighth Amendment claims applies).  To establish the objective component, "the alleged deprivation must be 'sufficiently serious' to constitute a deprivation of constitutional dimension." *Id*. at 989–90 (citations omitted).

A medical need is sufficiently serious "if it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Id*. at 990 (citation omitted).  The "negligent failure to provide adequate medical care, even one constituting medical malpractice, does not give rise to a constitutional violation." *Perkins v. Kan. Dep't of Corr.*, 165 F.3d 803, 811 (10th Cir. 1999) (citing *Estelle v. Gamble*, 429 U.S. 97, 105–06 (1976)).

In situations where treatment was delayed rather than denied altogether, the Tenth Circuit requires a showing that the inmate suffered "substantial harm" as a result of the delay.  *Sealock v. Colorado*, 218 F.3d 1205, 1210 (10th Cir. 2000) (citation omitted).  "The substantial harm requirement 'may be satisfied by lifelong handicap, permanent loss, or considerable pain.'" *Mata v. Saiz*, 427 F.3d 745, 751 (10th Cir. 2005) (quoting *Garrett v. Stratman*, 254 F.3d 946, 950 (10th Cir. 2001)).

A plaintiff must also satisfy the subjective prong. The Supreme Court has insisted upon actual knowledge: "the official must *both* be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, *and he must also draw the inference*." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994) (emphasis added). An apparent disagreement over course of treatment, however, does not rise to the level of a constitutional violation. *Gee v. Pacheco*, 627 F.3d 1178, 1192 (10th Cir. 2010). "A plaintiff 'need not show that a prison official acted or failed to act believing that harm actually would befall an inmate,' but rather that the official 'merely refused to verify underlying facts that he strongly suspected to be true, or declined to confirm inferences of risk that he strongly suspected to exist.'" *Lucas v. Turn Key Health Clinics, LLC*, 58 F.4th 1127, 1137 (10th Cir. 2023) (quoting *Farmer*, 511 U.S. at 842, 843 n.8).

The Tenth Circuit recently clarified that "it is possible to have some medical care and still state a claim under the gatekeeper theory." *Id*. at 1139. "The inquiry under a gatekeeper theory is not whether the prison official provided *some* care but rather whether they fulfilled their sole obligation to refer or otherwise afford access to medical personnel capable of evaluating a patient's treatment needs when such an obligation arises." *Id*. (citations omitted). Under the deliberate indifference analysis, "merely doing *something* (with no reference to the underlying condition) does not necessarily insulate one from liability." *Id*. "Instead, a court may need to determine whether there was the functional equivalent of a complete denial of care in light of the specific circumstances." *Id*. (citations omitted).

Plaintiff argues that he should not have been given Benadryl to alleviate severe chest and stomach pain, and that SCJ staff should not have performed CPR on Plaintiff due to the fact that Plaintiff had a faint pulse. Plaintiff has failed to show that a defendant was deliberately indifferent regarding his medical care. Staff performed CPR in an attempt to help Plaintiff, even if it was

later determined that CPR should not have been administered. Nothing suggest that officials were aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and that they also drew the inference. Plaintiff has not shown that a medical professional has prescribed treatment for his Hepatitis-C or that any delay in receiving treatment has caused him to suffer substantial harm as a result of the delay. An apparent disagreement over course of treatment does not rise to the level of a constitutional violation.

Based on the Report, the Court is considering dismissal of Plaintiff's Eighth Amendment claims. However, the Court will grant Plaintiff an opportunity to respond to the Report and to show good cause why his claims should not be dismissed for failure to state a claim.

## IV. Response Required

The *Martinez* report developed as a means "to ascertain whether there is a factual as well as a legal basis for [a] prisoner's claims." *Gee v. Estes*, 829 F.2d 1005, 1007 (10th Cir. 1987). The report "is treated like an affidavit, and the court is not authorized to accept the factual findings of the prison investigation when the plaintiff has presented conflicting evidence." *Hall v. Bellmon*, 935 F.2d 1106, 1111 (10th Cir. 1991) (citing *Sampley v. Ruettgers*, 704 F.2d 491, 493 n. 3 (10th Cir. 1983)). Thus, at this point in the proceedings the Court does not use the Report to resolve conflicts of fact. *See Swoboda v. Duback*, 992 F.2d 286, 290 (10th Cir. 1993) ("In determining whether a plaintiff has stated a claim, the district court may not look to the Martinez report, or any other pleading outside the complaint itself, to refute facts specifically pled by a plaintiff, or to resolve factual disputes."). In light of the Report, the Court is considering dismissal of this matter for failure to state a claim.

Plaintiff will be given an opportunity to respond to the Report and to show good cause why dismissal should not be entered. Failure to respond by the Court's deadline may result in dismissal

of this action without further notice for failure to state a claim.

**IT IS THEREFORE ORDERED BY THE COURT** that Plaintiff is granted until **November 18, 2024,** in which to respond to the Report and to show good cause, in writing to the undersigned, why Plaintiff's claims should not be dismissed for failure to state a claim.

**IT IS SO ORDERED**.

**Dated October 18, 2024, in Kansas City, Kansas.**

<u>**S/ John W. Lungstrum**</u>
**JOHN W. LUNGSTRUM**
**UNITED STATES DISTRICT JUDGE**