IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

MICHAEL RAY SCOTT,

Plaintiff,

v.                                                                  Case No.  24-3095-JWB

GENE WARD, Seward County
Sheriff, et al.,

Defendant.

**MEMORANDUM AND ORDER**

This matter is before the court on Defendants' motions to dismiss. (Docs. 79, 82.)  The motions are fully briefed and ripe for decision.  (Docs. 80, 83, 87, 89, 88, 93.)  The motions are GRANTED for the reasons stated herein.  Defendants' motion to strike Plaintiff's surreply is DENIED as moot.  (Doc. 95.)  Plaintiff's motion to supplement his complaint is DENIED.  (Doc. 98.)

I.    **Facts and Procedural History**

Plaintiff Michael Ray Scott brings this 42 U.S.C. § 1983 action against local government entities and individuals in Liberal, Kansas.  (Doc. 69 at 1.)  The following facts are taken from Plaintiff's amended complaint.  (Doc. 69.)  The court assumes their truth for the purposes of this order.

On December 26, 2022, Plaintiff, who was incarcerated at the Seward County Jail, complained to medical staff and Defendant Angie Davis ("Defendant Davis") of "severe abdominal pains."  (*Id.* at 8.)  Plaintiff complained again on December 28 and was seen by an attending ER doctor who "took blood samples and e.k.g's."  (*Id.*)  Then on February 17, 2023,

1

Plaintiff again complained of abdominal pains.  *See* (*Id.*)  Defendant Davis prescribed Benadryl for Plaintiff to take every two hours.  (*Id.*)  Defendant Davis did this remotely and did not evaluate Plaintiff.  (*Id.*)

At 5:30AM the following morning, Plaintiff was found unresponsive by jail staff.  (*Id.*)  Jail staff could not find a pulse or breathing.  (*Id.*)  Plaintiff was administered CPR.  (*Id.*)  Later, Liberal, Kansas, Fire and Rescue EMTs arrived and undertook care of Plaintiff.  (*Id.* at 9.)  Defendant Davis told EMTs that Plaintiff "had [a] history of faking symptoms."  (*Id.*)  EMTs told the jail that Plaintiff's breathing and pulse was altered due to the Benadryl.  (*Id.*)  Additionally, Plaintiff suffered a cracked sternum and ribs due to CPR.  (*Id.*)  Plaintiff visited the ER and remained there from February 18 to 20, 2023.  (*Id.* at 10.)  Dr. Rizwan Muhammad diagnosed "acute Hepatitis C as primary cause of symptoms."  (*Id.*)  In Plaintiff's complaint, he references medical records from his ER visit that stated Plaintiff should "follow up with gastroenterologist or hepatologist for treatment and monitoring of Hepatitis-C."  (*Id.* at 17.)  A Dr. Mitchell allegedly told Plaintiff that his abominable pains were caused by liver inflammation as a result of untreated Hepatitis C.  (*Id.* at 10.)  Later in Plaintiff's complaint he claims a Dr. Jabel, on March 28, 2023, put him on a pill for acid reflux, another pill for blood pressure, a third pill to coat stomach lining, and an itch cream.  (*Id.* at 15.)  He also says Dr. Jabel "told Davis the seriousness about getting Plaintiff to a proper specialist."  (*Id.*)  According to Plaintiff, the medication was only to provide comfort.  (*Id.*)

Plaintiff's complaint then skips forward over a year to May 14, 2024, when he submitted a medical request.  (*Id.* at 11.)  It appears Plaintiff sought to have his medical records sent to the jail's administration.  (*Id.*)  Defendant Davis stated that the medical center does not release these records in order to protect HIPAA rights.  (*Id.*)  Plaintiff advised the medical center he wanted

those records released so he could receive his recommended treatments.  (*Id.* at 12.)  Defendant Davis advised Plaintiff that this would be something his attorney would have to handle.  (*Id.*)

On March 24, 2024, Plaintiff was experiencing discoloration in his ankles that was blackish in color.  (*Id.*)  He was then taken to the ER with the same symptoms as his prior visit.  (*Id.*)  A technician explained to a jail officer accompanying Plaintiff that Plaintiff's symptoms were caused by untreated Hepatitis C that has led to an enlarged and scarred liver.  (*Id.*)  Plaintiff's complaint goes on to note that jail staff, including Defendants here, denied that Plaintiff had Hepatitis C.  (*Id.* at 12.)  In October of 2024, a nurse at the jail expressed concern about Plaintiff's "liver counts." (*Id.* at 13.)  That same month, a Dr. Barrons found that untreated Hepatitis C was causing injury and recommended that Plaintiff see a specialist.  (*Id.*)  On November 26, 2024, Plaintiff was seen by a Dr. Wade who diagnosed Plaintiff as being in an "advanced stage of liver failure which prevents the liver from filtering harmful toxins in [b]lood." (*Id.* at 15.)  Plaintiff also indicates that Dr. Wade said Plaintiff was at high risks of other conditions, such as esophageal varices, as a consequences of his liver.  (*Id.*)

Plaintiff claims these facts indicate that Defendants acted with "deliberate indifference" to his medical needs in violation of the Eighth and Fourteenth Amendments to the United States Constitution.  (*Id.* at 16.)  As a consequence of these facts, Plaintiff raises six claims in his complaint against Defendants.  Under count I Plaintiff alleges that Defendants failed to provide adequate medical care in violation of the Eighth Amendment's prohibition on cruel and unusual punishment.  (*Id.* at 20.)  Second, Plaintiff alleges that he received "discriminatory treatment" in violation of the Fourteenth Amendment due to his having an infectious disease.  (*Id.* at 24.)  In count III, Plaintiff alleges deliberate indifference again, but this time specifically aimed at Seward County and Gene Ward in his official capacity.  This is brought through 42 U.S.C. § 1983 as an

3

indirect municipal liability claim under *Monell*. (*Id.* at 26.) Count IV appears to be duplicative of count III. (*Id.* at 28.) Count V appears to be another deliberate indifference claim that is premised upon Defendants' failure to "administer an adequate medical remedy." (*Id.* at 30.) Count V is therefore duplicative of count I. Count VI is a negligence claim where Plaintiff contends that Defendants failed to satisfy their duty of reasonable care to Plaintiff. (*Id.* at 33.)

For his experience Plaintiff asks the court to grant him $1 billion in compensatory damages, $500,000 in punitive damages, $300,000 in "individual capacity" damages, $500,000 in "official capacity" damages, and an additional $1 billion in "bodily injury" damages. (*Id.* at 35.) Defendants have brought motions to dismiss. (Docs. 79, 82.)

## II.    Standard

To withstand a motion to dismiss for failure to state a claim under Rule 12(b)(6), a complaint must contain enough allegations of fact to state a claim to relief that is plausible on its face. *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)). All well-pleaded facts and the reasonable inferences derived from those facts are viewed in the light most favorable to Plaintiff. *Archuleta v. Wagner*, 523 F.3d 1278, 1283 (10th Cir. 2008). Conclusory allegations, however, have no bearing upon the court's consideration. *Shero v. City of Grove, Okla.*, 510 F.3d 1196, 1200 (10th Cir. 2007). Given Plaintiff's pro se status, the court construes the pleadings liberally, but it cannot act as his advocate or construct arguments on his behalf. *Garrett v. Selby Connor Maddux & Janer,* 425 F.3d 836, 840 (10th Cir. 2005) (citation omitted).

## III.    Analysis

### A.    Deliberate Indifference

Plaintiff's deliberate indifference claims fall under counts I, III, and V. (Doc. 69 at 20, 30). Count I is characterized as a "right to adequate medical care." (*Id.* at 20.) Count V is characterized as a "failure to administer adequate medical remedy." (*Id.* at 30.) The court merges the analysis on these two counts because it cannot discern a meaningful difference between them. Count III is an indirect municipal liability claim directed at Sheriff Ward in his official capacity. (Doc. 69 at 25.) This claim is analyzed in the next section. But through counts I and V Plaintiff raises deliberate indifference claims against Sheriff Ward in his individual capacity and Defendant Davis in her individual capacity. The court addresses each in turn.

Plaintiffs' claims arise when he was a pretrial detainee. As a consequence, his deliberate indifference claims properly arise under the Fourteenth Amendment rather than the Eighth. *Strain v. Regalado*, 977 F.3d 984, 989 (10th Cir. 2020) (citing *Garcia v. Salt Lake City*, 768 F.2d 303, 307 (10th Cir. 1985)). Nevertheless, the standard for deliberate indifference claims is the "same" regardless of "which amendment provides the constitutional basis for the claim." *Id.* (citing *Estate of Hocker by Hocker v. Walsh*, 22 F.3d 995, 998 (10th Cir. 1994)). To properly plead a deliberate indifference claim a plaintiff must "satisfy both an objective component (a sufficiently serious deprivation) and a subjective component (deliberate indifference on the part of the official responsible)." *White v. Kan. Dep't of Corr.*, 664 F. App'x 734, 741 (10th Cir. 2016) (citing *Craig v. Eberly*, 164 F.3d 490, 495 (10th Cir. 1998)).

The objective component requires Plaintiff show his "medical needs [are] 'so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" *Blackmon v. Sutton*, 734 F.3d 1237, 1244 (10th Cir. 2013) (quoting *Ramos v. Lamm*, 639 F.2d 559, 575 (10th Cir. 1980)). "[T]he deprivation at issue" must be "sufficiently serious." *Bradshaw v. Lappin*, 484

F. App'x 217, 222 (10th Cir. 2012) (citing *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)) (internal quotation marks omitted).

The subjective component requires "the prison official [] have a sufficiently culpable state of mind." *White*, 664 F. App'x at 741 (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). "[O]nly the unnecessary and wanton infliction of pain implicates the Eighth Amendment." *Farmer*, 511 U.S. at 834 (citing *Wilson v. Seiter*, 501 U.S. 294, 297 (1991)). Courts "have routinely equated deliberate indifference with recklessness." *Id.* at 836. In this context, the Supreme Court has defined recklessness as "know[ing] of and disregard[ing] an excessive risk to inmate health or safety[.]" *Id.* at 837. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and [s]he must also draw the inference." *Id.*

### 1. Defendant Angie Davis

Defendant Davis is a jail nurse. For her conduct to "rise to the high level of deliberate indifference" Plaintiff's allegations must contain more than mere "negligent care." *Strain v. Regalado*, 977 F.3d 984, 994 (10th Cir. 2020). "In considering the inmate's claim in *Estelle* that inadequate prison medical care violated the Cruel and Unusual Punishments Clause, we distinguished 'deliberate indifference to serious medical needs of prisoners,' from 'negligen[ce] in diagnosing or treating a medical condition,' holding that only the former violates the Clause. We have since read *Estelle* for the proposition that Eighth Amendment liability requires 'more than ordinary lack of due care for the prisoner's interests or safety.'" *Farmer*, 511 U.S. at 835 (internal citations omitted).

The court will assume that Plaintiff's allegations meet the objective prong of the deliberate indifference test. It appears to the court that allegations of untreated Hepatitis C easily clear the

sufficiently "serious" requirement for deliberate indifference. *Estelle*, 429 U.S. at 104. But Plaintiff's claims against Defendant Davis fail at the subjective component, where Plaintiff has failed to plead facts that indicate Defendant Davis had a "culpable state of mind." *White*, 664 F. App'x at 741. By Plaintiff's own admission, Defendant Davis repeatedly oversaw medical care that was administered to Mr. Ward. (Doc. 69 at 7, 10, 11.) This by itself seriously undermines any claim of a state of mind sufficient to support a deliberate indifference claim. Still, Plaintiff alleges that Defendant Davis refused the advice of medical doctors in treating Plaintiff. (Doc. 69 at 13, 15, 16.) Though it is repeated throughout the complaint it is entirely conclusory and without factual support. The closest Plaintiff gets is by arguing Defendants failed to comply with the ER's recommendation that Plaintiff follow up with a gastroenterologist or other specialist. (*Id.* at 21.) But Plaintiff has not alleged Nurse Davis was required to or responsible for these follow-ups. Plaintiff also alleges in count V, that "Defendants clearly mocked Plaintiff in front of outside care providers as well 'SCJ' staff and inmates." (*Id.* at 30.) But it is unclear how this demonstrates a failure to administer care by Nurse Davis. Additionally, mere awareness of Plaintiff's symptoms coupled with a failure to pursue Plaintiff's perceived best course of treatment cannot support a claim of deliberate indifference. *Perkins v. Kan. Dep't of Corr.*, 165 F.3d 803, 811 (10th Cir. 1999). As a consequence, Plaintiff's claims of deliberate indifference against Defendant Davis must be dismissed.

### 2. *Defendant Gene Ward*

Defendant Ward is the Sheriff of Seward County, Kansas. He is sued in both his individual and official capacities. The analysis in this section below addresses Defendant Ward's personal liability. His official liability is governed under the same standard as municipal liability which is addressed in the next section. *Kentucky v. Graham*, 473 US 159, 165-66 (1985) ("As long as the

government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity.").  Plaintiff's complaint does not detail how Defendant Ward was involved in the conduct that injured Plaintiff.  While Plaintiff does allege that Defendant Ward "failed to oversee the people who caused the wrongs" this, without more, is a bare recital, and cannot support a claim for deliberate indifference.  (Doc. 69 at 5.)  Furthermore, merely alleging that Sheriff Ward staffed the jail and was given information related to Plaintiff's care does not establish any action taken by Sheriff Ward to deny Plaintiff medical care.  (*Id.* at 10, 14.)  Nor does alleged awareness of Plaintiff's conditions show deliberate indifference to a medical need, especially here, where Plaintiff clearly received lots of medical attention while at the Seward County Jail.  (*Id.*)  Suits under 42 U.S.C. § 1983 require allegations of personal conduct by the defendants, but here Plaintiff has failed to allege any such facts against Defendant Ward.  *Vasquez v. Davis*, 882 F.3d 1270, 1275 (10th Cir. 2018) ("To recover damages from each of these Defendants under § 1983, Vasquez had to show that such Defendant personally participated in the alleged constitutional violation.").  Therefore, Plaintiff's deliberate indifference claims against Defendant Ward in his individual capacity must be dismissed.

### B.    Municipal Liability

Plaintiff also sues Seward County under a theory of municipal liability and Sheriff Ward in his official capacity.  (Doc 69 at 26, 27.)  As noted above, the standard is the same for these two Defendants.  *Graham*, 473 U.S. at 165-66.  The Supreme Court has acknowledged this kind of suit under § 1983 but it requires a showing that "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers."  *Monell v. Dep't of Social Serv. of the City of New York*, 436 U.S. 658, 690 (1978).  Without an allegation that Seward County or Sheriff Ward

promulgated a policy that led to the violation of Plaintiff's rights, Plaintiff's claims against Defendants cannot survive.  Upon inspection of the complaint, the court finds that other than the conclusory allegation that Sheriff Ward and/or Seward County promulgated such a policy, there are no facts alleged in the complaint to support Plaintiff's municipal liability claim.  (Doc. 69 at 27.)

Defendant Seward County also raises a defense to the extent that Plaintiff raises a failure to train claim.  Upon review of the complaint, the court does not believe that Plaintiff has properly asserted a failure to train claim.  (Doc. 69 at 5, 26.)  There are certainly no facts alleged that would support the even more detailed pleading standard required to support a failure to train claim.  "A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train."  *Connick v. Thompson*, 563 U.S. 51, 61 (2011).  This is because a policy of poor training is a "nebulous" claim.  *Id.* (quoting *Oklahoma City v. Tuttle*, 471 U.S. 808, 822-23 (1985)).  To state a claim, Plaintiff's alleged failure to train must show "deliberate indifference to the rights of persons with whom the [untrained employees] come into contact."  *Id.* (quoting *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989)) (modification in original) (internal quotation marks omitted).  "Ordinarily, a plaintiff must prove a pattern of untrained employees' constitutional violations to show deliberate indifference."  *George, on behalf of Bradshaw v. Beaver Cty.*, 32 F.4th 1246, 1253 (10th Cir. 2022).  That has not been plausibly alleged here with regard to either Seward County or Sheriff Ward.  As a result of the foregoing, Plaintiff's municipal liability and official capacity claims are dismissed.

### C.    Discriminatory Treatment

The parties do not address Plaintiff's discriminatory treatment allegation.  The court suspects that this is because it is buried in the fourth paragraph of count II amidst a 35-page

complaint.  (Doc. 69 at 24.)  Still the court sees fit to dismiss this portion of the complaint on its

own initiative under 28 U.S.C. § 1915(e)(2)(B)(ii) ("Notwithstanding any filing fee, or any portion

thereof, that may have been paid, the court shall dismiss the case at any time if the court determines

that—(ii) fails to state a claim on which relief may be granted[.]").

Count II is extraordinarily difficult for the court to parse.  It is titled "Violation of

constitutional Rights; And Bodily injury claim."  (Doc. 61 at 23.)  It refers to the Fourteenth

Amendment, a Kansas workers compensation statute, and the objective prong of the deliberate

indifference standard under the Eighth Amendment.  (*Id.* at 24-25.)  It seems to allege that Plaintiff

received discriminatory treatment because he had an infectious disease.  (*Id.* at 24.)  To the extent

it is a cognizable cause of action, nothing in the complaint supports this allegation.  This court

does not have further latitude to speculate as to Plaintiff's allegations.  The court cannot craft

claims or arguments on behalf of a pro se litigant. *Selby Connor Maddux & Janer,* 425 F.3d at

840.  Therefore, as Plaintiff fails to state a claim, his discriminatory treatment count is dismissed.

### D.    Negligence

#### 1.  *Defendants Seward County and Defendant Ward in His Official Capacity*

The court views plaintiff's "reasonable man" complaint as a negligence claim arising under

Kansas tort law.  (Doc. 69 at 33-34.)  Under Kansas law, before a municipality or its an employee

may be sued under the Kansas Tort Claims Act ("KTCA"), Plaintiff must notify the relevant

government entity "before commencing such action."  K.S.A. § 12-105b (d)(1); *see also Dunegan*

*v. City of Council Gove, Kansas Water Dep't*, 77 F. Supp. 2d 1192, 1205 (D. Kan. 1999) ("The

filing of a proper notice under K.S.A. 12–105b(d) is a condition precedent to the filing of an action

against a municipality.").  Failure to provide notice results in dismissal of the action, because the

notice requirement is "jurisdictional" in nature.  *Gessner v. Phillips Cnty. Com'rs*, 11 P.3d 1131,

1134 (Kan. 2000) (quoting Minutes of the House Judiciary Committee, February 5, 1987, Hearing H.B. 2023). As plaintiff has provided the court with no evidence that he has complied with the notice requirement, the court will dismiss the negligence claims against Defendant Seward County and Defendant Ward for want of jurisdiction.

   *2. Defendant Angie Davis and Defendant Ward in His Individual Capacity*

   To the extent that Plaintiff alleges negligence claims against Defendant Davis and Defendant Ward in his individual capacity, the court declines to exercise its supplemental jurisdiction over these claims as they are entirely state law claims. 28 U.S.C. § 1367 (c)(3). The precedent federal claims have all been dismissed. Generally speaking, when a federal court no longer has any claims with federal subject matter jurisdiction before it, it should decline to exercise supplemental jurisdiction over remaining state law claims as they are the proper province of the state courts. *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 726 (1966) ("Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well."). Therefore, the court dismisses Plaintiff's remaining negligence claims.

   **E.    Motion to Supplement**

   As noted above, the court denies Plaintiff's motion to supplement his complaint. (Doc. 98.) The court construes Plaintiff's motion as one to file a supplemental pleading under Rule 15(d). Rule 15(d) permits a party, upon leave granted by the court, "to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented." Fed. R. Civ. P. 15(d). District courts have wide latitude to determine whether to allow supplemental pleadings. *Walker v. United Parcel Serv.*, 240 F.3d 1268, 1278 (10th Cir. 2001). Generally, "authorization should be liberally granted unless good

reason exists for denying leave, such as prejudice to the defendants." *Id.* (quoting *Gillihan v. Shillinger*, 872 F.3d 935, 941 (10th Cir. 1989) (internal quotation marks omitted)).  The court denies Plaintiff's motion here because it finds that the supplement would be in vain. Here, Plaintiff seeks to supplement his complaint "to set out the '11-5-25' chronic care providers visit."  (Doc. 98 at 1.)  It is unclear what relevance this information would have to Plaintiff's allegations given that they arise from events occurring between 2022 and 2024. (Doc. 69.)  Additionally, Plaintiff was transferred to a new correctional facility prior to the events with which he seeks to supplement his pleading.  (Doc. 35.)  Therefore, the court denies Plaintiff's motion to supplement.  (Doc. 98.)

## IV.    Conclusion

For the foregoing reasons, the court GRANTS Defendants' motions to dismiss.  (Docs. 79, 82.)  Defendants' motion to strike Plaintiff's surreply is DENIED as moot.  (Doc. 95.)  Plaintiff's motion to supplement his complaint is DENIED.  (Doc. 98.)

IT IS SO ORDERED.  Dated this 13th day of February, 2026.


s/ John W. Broomes
JOHN W. BROOMES
CHIEF UNITED STATES DISTRICT JUDGE